**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Inline Packaging, LLC,

        Plaintiff,

v.

Graphic Packaging International, Inc.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 15-3183 ADM/LIB

_____

Brent Lorentz, Esq., Robert Weinstine, Esq., and Justice Lindell, Esq., Winthrop & Weinstine, PA, Minneapolis, MN, on behalf of Plaintiff.

Amanda Ames, Esq., David Hamilton, Esq., and Jason Hicks, Esq., Womble Carlyle Sandridge & Rice, LLP, Washington, D.C., and Felicia Boyd, Esq., Barnes & Thornburg LLP, Minneapolis, MN, on behalf of Defendant.

_____

## I.  INTRODUCTION

This matter is before the undersigned United States District Judge on Plaintiff Inline Packaging, LCC's ("Inline") Objection [Docket No. 90] and Defendant Graphic Packaging International, Inc.'s ("Graphic") Objection [Docket No. 91] to Magistrate Judge Leo I. Brisbois' July 25, 2016 Order ("Order") [Docket No. 77] granting in part and denying in part Inline's First Motion to Compel [Docket No. 55] and denying without prejudice Graphic's Motion to Consolidate Antitrust and Patent Suits for Pretrial Purposes and to Stay the Antitrust Suit [Docket No. 61].  For the reasons set forth below, the Objections are overruled.

## II.  BACKGROUND[1]

### A. Parties

Inline and Graphic compete in the susceptor food packaging industry.  Compl. [Docket No. 1] ¶ 2.  Susceptor food packaging is active food packaging that converts microwave energy to high surface temperatures which crisp and brown foods.  Id. ¶ 60.  Inline and Graphic primarily compete within the susceptor food packaging market for supply contracts with companies such as Nestle, Heinz, Little Lady Foods, Nation Pizza Products, and Smuckers.  Id. ¶¶ 20–21.

### B. Contemporaneous Lawsuits

#### 1. Patent Suit

This antitrust case is one of two lawsuits between Inline and Graphic that are pending in the United States Court for the District of Minnesota.  The other suit is a patent infringement action filed by Graphic on June 5, 2015, less than two months before Inline filed this antitrust action.  See Graphic Packaging Int'l, Inc. v. Inline Packaging, LLC, No. 15–3476 (JNE/LIB) (the "Patent Suit").

In the Patent Suit, Graphic alleges that Inline has infringed four of Graphic's patents relating to susceptor products, namely U.S. Patent Nos. 8,872,078 (the "'078 Patent"); D694,106; D694,124; and D727,145.  See generally Patent Suit Compl. [Patent Suit Docket No. 1].

On January 12, 2016, the Patent Office's Patent Trial and Appeal Board ("PTAB")

---

[1] The full background of this case is set forth in the Order and in this Court's Memorandum Opinion & Order of February 23, 2016 [Docket No. 36] and is incorporated by reference.

granted a petition by Inline seeking *inter partes* review ("IPR") of the claims in the '078 Patent. See Inline's Mem. Supp. Mot. Stay [Patent Suit Docket No. 52] at 2. Inline then moved to stay the Patent Suit pending completion of the IPR proceedings. See Inline's Mot. Stay [Patent Suit Docket No. 50]. Inline's motion was granted on April 6, 2016. See Order, Apr. 6, 2016 [Patent Suit Docket No. 66]. The Patent Suit remains stayed pending the completion of the IPR proceedings related to the '078 Patent. Id.

### 2. Antitrust Suit

On July 31, 2015, Inline filed this lawsuit (the "Antitrust Suit") against Graphic. Inline alleges that Graphic, in response to price competition from Inline and others, engages in anticompetitive conduct to maintain a monopolizing position in the crisping and browning susceptor packaging market. Compl. ¶¶ 23–58, 81–110. According to Inline, Graphic's conduct has caused Inline to lose existing and potential customers. Id. ¶¶ 111, 114. Inline asserts five claims against Graphic: Count I—Tortious Interference with Prospective Business Relations; Count II—Tortious Interference with Existing Contractual Relations; Count III—Misappropriation of Trade Secrets; Count IV—Violation of Minn. Stat. § 325D.52 for Maintenance or Use of a Monopoly Power; and Count V—Violation of the Sherman Antitrust Act, 15 U.S.C. § 2. Id. ¶¶ 121–48.

Inline's antitrust claims are premised on three theories of anticompetitive behavior: predatory discount bundling, misappropriation of competitors' intellectual property related to susceptor packaging, and baseless threats of sham litigation. Id. ¶¶ 23–54.[2] Inline contends the

---

[2] Inline also alleged that Graphic engaged in the anti-competitive practice of "baiting/submarine patent activities." Compl. ¶¶ 55–58; 106–10. However, claims based on this theory of antitrust liability were dismissed by the Court in February 2016. See Mem. Op. Order,

sham litigation effort by Graphic to achieve market monopolization includes: (1) Graphic directly threatening its competitors and their customers with patent infringement on expired or inapplicable patents; and (2) Graphic communicating directly with Inline's customers to threaten potential suit against Inline and, in so doing, deters those customers from pursuing business with Inline and gains the business for itself. Id. ¶¶ 31, 39–42.

As an example of an instance when Graphic has communicated directly with Inline's customers by threatening litigation against Inline, the Complaint alleges that after a food company buyer accepted Inline's bid to supply 1.1 billion units of susceptor food packaging products in 2014, the buyer ultimately ordered only ten percent of the product in the contract. Id. ¶ 41. Inline attributes Graphic's communications with the food company buyer for the reduction; that is, Graphic communicated to the food company buyer that it was planning to sue Inline and therefore the customer should not contract with Inline for susceptor products. Id. In another example, the Complaint describes an occasion when Inline was unsuccessful in securing a contract from Nation Pizza Products due to Graphic communicating to Nation Pizza Products that it would sue Inline if Inline was awarded the Nation Pizza Products contract. Id. ¶ 42.

In addition to the antitrust claims, Inline asserts claims for tortious interference with Inline's existing and prospective contractual relationships based on Graphic's above-described communications to the food company buyer and to Nation Pizza Products. See Compl. ¶¶ 41–43, 122–25, 128–30. Inline also asserts a claim for misappropriation of trade secrets, alleging that Graphic copied a confidential susceptor sheet design that Inline had created for Heinz in 2008. Id. ¶ 53.

---

Feb. 23, 2016 [Docket No. 36] at 22–23, 32.

**C. Order**

Judge Brisbois' July 25, 2016 Order resolved two motions that were filed by the parties in the Antitrust Suit: (1) Inline's First Motion to Compel [Docket No. 55] ("Motion to Compel"); and (2) Graphic's Motion to Consolidate Antitrust and Patent Suits for Pretrial Purposes and to Stay the Antitrust Suit [Docket No. 61] ("Motion to Consolidate and Stay").[3]

**1. Inline's Motion to Compel**

The Order denied in part Inline's Motion to Compel by limiting the subject matter scope of discovery to the patents, products, entities, and instances of anti-competitive conduct specifically alleged in the Complaint. Order at 10–11. In setting this limitation, the Order referenced the Supreme Court's concern over expensive and burdensome discovery in antitrust cases, as expressed in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 558–60 (2007). Id. at 9–10. The Order recognized that Twombly pertained to pleading requirements rather than discovery limitations, but noted that "in the wake of Twombly courts have limited the subject matter scope of discovery to evidence concerning only specific products and entities that a plaintiff identifies in its complaint." Id. at 10. The Order also noted that the recent amendments to Federal Rule of Civil Procedure 26(b)(1) clarify that the scope of discovery is limited to evidence that is relevant to claims or defenses already existing in the case. Id. at 11.

**2. Graphic's Motion to Consolidate and Stay**

The Order denied without prejudice Graphic's Motion to Consolidate and Stay. Id. at 39. Judge Brisbois reasoned that only a small overlap exists between the issues involved in the

---

[3] The Motion to Consolidate and Stay requested that this case be stayed pending resolution of the IPR proceeding in the Patent Suit. See Def.'s Mem. Supp. Mot. Consolidate Stay [Docket No. 63] at 2.

Antitrust Suit and the Patent Suit, and thus a stay would not significantly simplify the issues in this litigation and would primarily result in delay. Id. at 36–38. The Order did not analyze Graphic's request to consolidate the cases because Graphic represented at the hearing that the sole issue was whether the Antitrust Suit should be stayed. Id. at 28, n.6.

### III. DISCUSSION

#### A. Standard of Review

The standard of review applicable to an appeal of a magistrate judge's order on a nondispositive issue is extremely deferential. Reko v. Creative Promotions, Inc., 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999). The district court must affirm an order by a magistrate judge unless it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Chakales v. Comm'r of Internal Revenue, 79 F.3d 726, 728 (8th Cir.1996). "A decision is 'contrary to law' when it 'fails to apply or misapplies relevant statutes, case law or rules of procedure.'" Knutson v. Blue Cross & Blue Shield of Minn., 254 F.R.D. 553, 556 (D. Minn. 2008) (quoting Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co., 592 F. Supp. 2d 1087, 1093 (N.D. Iowa 2008)).

#### B. Inline's Objection

Inline objects to the portion of the Order that limits the subject matter scope of discovery to the patents, products, entities, and anti-competitive conduct to those that were specifically alleged in support of claims or defenses identified in the pleadings. Inline contends that this limitation is contrary to law and should not have been applied to the following discovery

requests by Inline:

> **INTERROGATORY NO. 4:** Identify all patents or other intellectual property rights that, at the time of sale, Graphic contends covered the microwave susceptor food packaging identified in response to Interrogatory No. 3.[4]
>
> **REQUEST NO. 15:** All documents relating to or consisting of communications between Graphic and any Customer regarding the purchase of paperboard or microwave susceptor food packaging, including but not limited [to] quotations, bids, proposals, contracts, discussions about product function, discussions about product quality, discussion of the pricing and other terms of the transaction, discussion of competing products or suppliers, and discussion of patents or intellectual property.
>
> **REQUEST NO. 27:** All documents relating to or consisting of Graphic's process for identifying, investigating, reporting, and responding to potentially infringing products, including, but not limited to, internal communications, emails, memos, meeting minutes, training manuals or materials, or other employee presentations.
>
> **REQUEST NO. 33:** All documents relating to or consisting of the personnel or employed history file of any sales representative identified in response to Interrogatory No. 7 above, including but not limited to offer letters, employment agreements, confidentiality agreements, and termination and separation agreements.
>
> **REQUEST NO. 46:** All documents relating or referring to any effort by Graphic to reverse engineer, replicate, or design around, or modify any microwave susceptor food packaging product sold by any competitor.

Inline's Obj. at 3–4.

In arguing that the discovery limitation is contrary to law, Inline contends that the Complaint alleges a pattern or practice of sham threats by Graphic against competitors and their

---

[4] Interrogatory No. 3 asked Graphic to identify all products sold to "Customers." "Customer" was defined as "a person who purchased microwave susceptor food products from Graphic since January 1, 2000." Inline's Obj. at 3 n.1.

customers, and that Inline is entitled to discover instances of misconduct that are consistent with the alleged pattern or practice. Inline further argues that no court appears to have relied on Twombly to limit discovery as the Order does here. Graphic responds that the discovery limitation is proper because Inline's discovery requests are unduly burdensome and "essentially required Graphic to open up all of its books and records to Inline." Graphic's Resp. Inline's Obj. [Docket No. 95] at 9.

The discovery limitation is not contrary to law. As Judge Brisbois correctly recognized, "even if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." Order at 7 (quoting Miscellaneous Docket Matter #1 v. Miscellaneous Docket Matter #2, 197 F.3d 922, 925 (8th Cir. 1999)). Consistent with this rule, courts have limited discovery to the allegations specifically pled in the complaint where a plaintiff has not alleged factual allegations to substantiate that the plaintiff's claims pertain to additional entities or products not identified in the complaint. See, e.g., Leisman v. Archway Med., Inc., No. 14–1222, 2015 WL 4994084, at *2 (E.D. Mo. Aug. 19, 2015) ("Plaintiffs are limited to those allegations specifically pled in the complaint. The exploration through discovery of topics beyond those allegations is overbroad, unduly burdensome, and constitutes a fishing expedition by Plaintiffs to develop new claims.").

Nor was it erroneous for the Order to acknowledge Twombly's concern over discovery abuse, particularly in antitrust cases, in reaching the conclusion that discovery limitations are appropriate here. Both before and after Twombly, courts have the authority and obligation to supervise discovery and avoid discovery abuse.

The discovery limitation established in the Order is also consistent with Rule 26(b)(1) of the Federal Rules of Civil Procedure, which was amended as of December 1, 2015 to emphasize the proportionality language formerly included in subdivision (b)(2)(C)(iii). Rule 26(b)(1) now states in relevant part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. Rule 26(b)(1). Here, limiting discovery to the patents, products, entities, and instances of anti-competitive conduct specifically alleged in the pleadings ensures that the discovery is "relevant to any party's claim or defense and proportional to the needs of the case." Id.

Moreover, the type of evidence Inline is seeking to support its claim that Graphic engaged in a pattern and practice of sham litigation is discoverable through other Interrogatories and Document Requests that have been served on Graphic. For example, Inline's Interrogatory No. 7 requires Graphic to "[i]dentify each person with whom Graphic has communicated regarding actual or alleged infringement of any Graphic patents purportedly applicable to any microwave susceptor food packaging." Order at 14. The Order requires Graphic to produce discovery related to this request from the time period beginning January 1, 2002 to the present. Id. at 16, 18. Similarly, Request for Production No. 25 requires Graphic to produce "[a]ll documents relating to or consisting of communications with Customers regarding patents or

other intellectual property rights pertaining to microwave susceptor food packaging." Lorentz Aff. [Docket No. 59] Ex. A at 49.[5] Graphic has agreed to produce these documents. See Graphic's Resp. Inline's Obj. at 11. Thus, contrary to Inline's argument, the Order does not foreclose Inline's ability to discover "Graphic's communications with customers and competitors, and its internal documentation, relating to all instances wherein Graphic asserted its microwave susceptor intellectual property rights." Inline's Obj. at 2.

**C. Graphic's Objection**

Graphic argues that Judge Brisbois erred by denying its request for a stay, and by not ruling on Graphic's motion for consolidation.[6]

**1. Stay**

Graphic contends that Judge Brisbois applied the wrong standard and reached the wrong conclusion when he determined that a stay would not "significantly simplify the issues in the Antitrust Suit." Order at 37.

A district court holds the inherent power to manage their dockets and stay proceedings. Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). The decision to grant a stay is within the discretion of the court. Regalo Int'l, LLC v. DEX Prods., Inc., No. 08–4206, 2009 WL 2951107, at *1 (D. Minn. Sept. 9, 2009). In deciding whether to stay litigation pending IPR proceedings, a court weighs the following factors:

---

[5] The page number refers to the number assigned in the Court's electronic case management filing system (CM/ECF).

[6] Graphic also objected to the Order's timeframe for producing responsive documents, but this portion of Graphic's Objection was subsequently resolved during a status conference and was withdrawn. See Letter, Aug. 10, 2016 [Docket No. 93].

> (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in the litigation and facilitate the trial of that case; and (3) whether discovery is complete and a trial date is set.

Id.; Intellectual Ventures II LLC v. U.S. Bancorp, No. 13–2071, 2014 WL 5369386, at *4 (D. Minn. Aug. 7, 2014).

Graphic argues that the standard for granting a stay is whether a stay will simplify the issues, not whether the stay will "significantly simplify the issues." Graphic's Obj. at 2 (quoting Order at 37). Graphic contends that a stay will simplify the issues in the litigation because the decision in the IPR Proceeding for the '078 Patent will narrow and streamline the allegations of sham litigation at issue in this Antitrust Suit.

Graphic's argument ignores that the test for determining the appropriateness of a stay involves weighing the relevant factors. Where the possibility for simplifying the issues is insignificant, this factor may tip against a stay. See, e.g., Unline Beheer B.V. v. Tropical Flooring, No. 14–2209, 2014 WL 2795360, at *7 (C.D. Cal. Jun. 13, 2014) (considering "whether a stay will be of significant benefit so as to justify a further delay"). Thus, it was not error for Judge Brisbois to consider the significance of any simplification that might result from a stay.

Additionally, Judge Brisbois did not clearly err in determining that the IPR proceedings concerning the claims in Patent No. '078 would not significantly simplify the issues in this Antitrust Suit because "the gravamen of the claims in this Antitrust Suit is Graphic's alleged anti-competitive conduct, in which Inline's allegations of sham litigation play only a relatively small part." Order at 37. The IPR Proceedings will have minimal impact on the issues related to threats of sham litigation, and little to no impact on the misappropriation of trade secrets claim or

the antitrust claims based on (1) discount bundling practices and (2) misappropriation and misuse of intellectual property.

Having concluded that any simplification to be gained from a stay would be modest, Judge Brisbois determined that staying the proceedings would primarily result in delay. Id. at 38. Thus, the denial of the stay was consistent with cases in this district holding that "it is inappropriate to stay a matter where the stay will serve simply to delay proceedings." Ecolab, Inc. v. FMC Corp., No. 05–831, 2007 WL 1582677, at *1 (D. Minn. May 30, 2007); see also Crystal Import Corp. v. Avid Identification Sys., Inc., No. 05–2527, 2007 WL 424537, at *4 (D. Minn. Feb. 2, 2007) (finding plaintiff would likely be prejudiced by staying plaintiff's antitrust action during pendency of defendant's patent actions because "the patent actions will resolve little, if anything, at issue in this antitrust action," and because "[b]asic principles of securing 'the just, speedy and inexpensive determination' weigh against any further delay.'" (quoting Fed. R. Civ. P. 1)). Denying the stay without prejudice was not clearly erroneous or contrary to law.

**2. Consolidation**

Graphic also argues that Judge Brisbois erred by not ruling on the request to consolidate the cases. Graphic contends that as an alternative to consolidating the cases and staying the Antitrust Suit, Graphic requested that the cases be consolidated and the stay in the Patent Suit lifted. See Graphic's Obj. at 10 (citing Def's. Mem. Supp. Mot. Stay Consolidate [Docket No. 63] at 22).  However, at oral argument, Graphic agreed with Judge Brisbois that the "sole issue" was whether the Antitrust Suit should be stayed:

> The Court:   Even on the stay and/or consolidated issue, in fact, whether to consolidate or not, the more I think about it may well be entirely moot because if you stay this action, there's no need to consolidate.

> Graphic: I think that's right.
>
> The Court: Right. And so – and if I don't stay this action and consolidate, then there's a de facto stay. So really the sole issue here is do I stay this action?
>
> Graphic: I think you're right, your honor.

Hr'g Tr. [Docket No. 75] at 31:19–32:2.

Based on this exchange, Judge Brisbois did not clearly err in not ruling on Graphic's request to consolidate the cases.

## IV.  CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Inline's Objection [Docket No. 90] is **OVERRULED**; and

2. Graphic's Objection [Docket No. 91] is **OVERRULED**.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: November 2, 2016.

13