UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Inline Packaging, LLC,

        Plaintiff,

v.

Graphic Packaging International, LLC,

        Defendant.

**MEMORANDUM OPINION AND ORDER**
Civil No. 15-3183 ADM/LIB

___

Kyle R. Kroll, Esq., Robert R. Weinstine, Esq., Justice Ericson Lindell, Esq., and Brent Lorentz, Esq., Winthrop & Weinstine, PA, Minneapolis, MN, on behalf of Plaintiff.

Felicia J. Boyd, Esq., Barnes & Thornburg LLP, Minneapolis, MN; David B. Hamilton, Esq., Barry J. Herman, Esq., and Victoria Ann Bruno, Esq., Womble Bond Dickinson (US) LLP, Baltimore, MD; Jason C. Hicks, Esq., and Amanda Norris Ames, Esq., Womble Bond Dickinson (US) LLP, Washington, D.C.; John G. Berry, Esq., Womble Bond Dickinson (US) LLP, Atlanta, GA; and Brent F. Powell, Esq., Womble Bond Dickinson (US) LLP, Winston Salem, NC, on behalf of Defendant.

___

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant Graphic Packaging, LLC's ("Graphic") Motion for Review of Cost Judgment [Docket No. 1066] and by Plaintiff Inline Packaging, LLC's ("Inline") Motion for Review of Cost Judgment [Docket No. 1068]. For the reasons stated below, Graphic's Motion is denied and Inline's Motion is granted in part and denied in part.

## II. BACKGROUND

In July 2015, Inline filed this lawsuit against Graphic alleging antitrust violations, tortious interference, and misappropriation of trade secrets. See Compl. [Docket No. 1]. In September 2018, this Court issued a Memorandum Opinion and Order [Docket No. 1035] granting summary judgment to Graphic on all claims and entered Judgment [Docket No. 1037]

in favor of Graphic. Inline has filed a Notice of Appeal [Docket No. 1040].

On October 5, 2018, Graphic filed a Bill of Costs [Docket No. 1039] seeking $304,930.89 as reimbursement for: (1) Clerk fees ($800); (2) fees for transcripts necessarily obtained for use in the case ($64,159.41); (3) fees for witnesses ($12,751.70); and (4) fees for the costs of making copies necessarily obtained for use in the case ($227,219.78). Inline filed an Objection [Docket No. 1053] to Graphic's Bill of Costs on October 19, 2018.

On May 2, 2019, the Clerk of Court entered a Cost Judgment [Docket No. 1065] awarding Graphic $47,767.90 in costs. The Cost Judgment includes Clerk fees of $800 for the pro hac vice fees of Graphic's counsel; transcript fees of $35,238.95; witness fees of $10,646.10 (including witness travel costs); and copy fees of $1,082.85. See Cost Judgment at 1. The Clerk denied $226,137.53 in e-discovery related costs that Graphic claimed as fees for the cost of making copies. Taxation Costs Summary [Docket No. 1065, Attach. 1] at 7. The Clerk's stated reason for denying these costs was that "E-Discovery costs . . . are not taxable by the clerk." Id.

Graphic now seeks review of the Clerk's decision not to award electronic discovery expenses to Graphic. Inline seeks review of the Clerk's decision to award Graphic its witness travel costs and pro hac vice fees.

### III. DISCUSSION

**A. Legal Standard**

Federal Rule of Civil Procedure 54(d)(1) provides in relevant part: "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." A cost award must, however, fit within the categories of taxable costs enumerated in 28 U.S.C. § 1920. Little Rock Cardiology Clinic PA v.

2

Baptist Health, 591 F.3d 591, 601 (8th Cir. 2009). Section 1920 permits taxation of the following categories of costs:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title; [and]
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

The Supreme Court has emphasized that taxable costs under § 1920 "are limited to relatively minor, incidental expenses," and "are a fraction of the nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators." Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 573 (2012). Given the narrow scope of taxable costs, "the assessment of costs most often is merely a clerical matter that can be done by the court clerk." Id. (quoting Hairline Creations, Inc. v. Kefalas, 664 F.2d 652, 656 (7th Cir. 1981)).

Although the district court has discretion to decline to tax costs, "the Rules presume that the prevailing party is entitled to costs." Lochridge v. Lindsey Mgmt. Co., 824 F.3d 780, 783 (8th Cir. 2016) (quoting Reger v. Nemours Found., Inc., 599 F.3d 285, 289 (3d Cir. 2010)). A losing party bears the burden of overcoming the presumption that the prevailing party may recover all of its allowable costs. Stanley v. Cottrell, Inc., 784 F.3d 454, 464 (8th Cir. 2015). A

3

district court applies a de novo review standard to a clerk's taxation of costs. Farmer v. Arabian Am. Oil Co., 379 U.S. 227, 233 (1964).

**B. Graphic's Motion for Review**

Graphic seeks to recover $226,137.53 in fees related to the discovery of electronically stored information ("ESI"). Graphic argues the fees were for "copying-related services" and were necessary to comply with the parties' stipulated ESI Protocol [Docket No. 53] governing the production of documents in discovery. Def.'s Mot. Review Cost J. [Docket No. 1066] at 8–9.

Under the ESI Protocol, the parties "only agree[d] to produce a limited amount of metadata absent a showing of special need," because "much metadata is unusable and of little value and the time required to review the metadata makes its production burdensome and costly." ESI Protocol at 5.[1] The parties thus agreed that metadata production would be limited to 21 metadata fields. Id. at 6. The ESI Protocol also states that Optical Character Recognition ("OCR") files will not be generated unless a document has been redacted. Id. at 5. The parties also agreed to "make reasonable efforts to remove duplicate data across custodians and to produce searchable metadata in the "Duplicate Custodian" field for each produced document." Id. at 4. Deduplication of data was to be done "us[ing] industry standard deduplication based on MD5HASH values at the family level," rather than at the individual file level. Id.

Graphic retained the assistance of e-discovery vendor Integreon Discovery Solutions ("Integreon") to comply with the ESI Protocol's requirements. Mazza Decl. [Docket No. 1057]

---

[1] Metadata is "[t]he generic term used to describe the structural information of a file that contains data about the file, as opposed to describing the content of a file." 15 Sedona Conf. J. 305, 339 (2014).

4

¶ 5; Scherer Decl. [Docket No. 1066, Attach. 1] ¶¶ 1, 2.  Integreon's services generally included a "forensic collection" process, followed by a conversion process.

In the "forensic collection" process, Integreon collected and copied Graphic's data from over 80 sources into a single file called an "E01 file" so that the underlying metadata from each native file would be preserved.  Scherer Decl. ¶¶ 6, 7.  Integreon charged a flat "Forensic Collection" fee of $1,500 per day, as well as travel and lodging costs for the employee who performed this service.  Id. ¶ 6; Bill of Costs Ex. R ("Ex. R") [Docket No. 1039, Attach. 5].

Integreon then performed a conversion process to convert the native files within the E01 file to a readable format.  Scherer Decl. ¶ 9.  The conversion process was required because after the individual native files had been copied into the E01 file they were not in readable format, and thus the E01 file was "largely unusable without further converting the individual files to readable format."  Id. ¶ 8.  The charges for this conversion are referred to on Integreon's invoices as "EDD-Pre-Processing" and "EDD-Native Process," or just "Pre-Process" and "Native Process."  Ex. R; Scherer Decl. ¶ 9.  Integreon also charged for the technical time to set up the conversion process.  Scherer Decl. ¶ 9; Mazza Decl. ¶ 9; Ex. R.

The software used in the conversion process also compared each copied file to all other copied files from the 80 sources of copied data and removed duplicates.  Mazza Decl. ¶¶ 7, 8; Scherer Decl. ¶ 11.  Integreon's invoices do not delineate what portion of the charges for the conversion process are attributable to comparing the files and removing duplicates.  Additionally, no information has been provided to the Court as to how many of the files that were initially copied into the E01 database were later removed as duplicates.

The conversion process also entailed creating an image and OCR text for all native files

5

that did not include searchable text, regardless of whether the native file was a redacted document. Scherer Decl. ¶ 10. Integreon's charges for this service are referred to on its invoices as "EDD - OCR." See Ex. R.

After converting the files to a readable format, removing duplicates, and creating OCR text, the converted files were delivered to Graphic's counsel. Scherer Decl. ¶ 12; Mazza Decl. ¶ 8. Graphic's counsel then created and maintained an e-discovery database for the review, coding, and production of documents in this case. Def.'s Mot. Review Cost J. at 17.[2] No information has been provided to the Court regarding how many documents from those initially copied and converted by Integreon were actually produced by Graphic's counsel for use in this litigation.

Graphic argues the fees charged by Integreon were necessary to comply with the ESI Protocol and are taxable as costs for making copies. Inline responds that none of Graphic's ESI expenses are taxable because they are for document processing activities that merely lead up to the production of copies, and these preliminary activities do not amount to "making copies" under the narrow scope of § 1920(4). Inline additionally argues that to the extent that some of Integreon's services fell within the purview of "making copies" under § 1920(4), Graphic's invoices and declarations do not adequately identify what proportion or aspect of the invoiced services involved making a copy.

Section 1920(4) authorizes a prevailing party to recover "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in

---

[2] Graphic does not seek recovery of its counsel's costs to create, maintain, and review the database.

the case." 28 U.S.C. § 1920(4). An earlier version of § 1920(4) covered "[f]ees for exemplification and copies *of papers,*" but Congress amended the statute on October 13, 2008 to include ESI by allowing "the costs of making copies *of any materials*" to be taxed. CBT Flint Partners, LLC v. Return Path, Inc., 737 F.3d 1320, 1326 (Fed. Cir. 2013).

Although the Eighth Circuit has not yet addressed the extent to which ESI related charges are taxable under § 1920(4), other Circuit courts and courts within the Eighth Circuit permit recovery of ESI costs if the costs fall within the meaning of "exemplification" or "making copies." See, e.g., Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158, 166–71 (3d Cir. 2012); In re Online DVD-Rental Antitrust Litig., 779 F.3d 914, 926 (9th Cir. 2015); CBT, 737 F.3d at 1328; Country Vintner of North Carolina, LLC v. E. & J. Gallo Winery, Inc., 718 F.3d 249, 258–62 (4th Cir. 2013); Assoc. Elec. & Gas Ins. Servs. v. BendTec, Inc., No. 14–1602, 2016 WL 740409, *2–3 (D. Minn. Feb. 24, 2016); Jo Ann Howard & Assocs., P.C. v. Cassity, 146 F. Supp. 3d 1071, 1083 (E.D. Mo. 2015). "[M]aking copies" is interpreted to include scanning documents and converting native files to a readable format. See Race Tires, 674 F.3d at 167; Country Vintner, 718 F.3d at 261; Assoc Elec., 2016 WL 740409, at *3; Hallmark Cards, Inc. v. Monitor Clipper Partners, LLC, No. 08–0840, 2013 WL 1155245, *1 (W.D. Mo. Mar. 20, 2013).

As the Third and Fourth Circuits have recognized,

> Section 1920(4) does not state that all steps that lead up to the production of copies of materials are taxable. It does not authorize taxation merely because today's technology requires technical expertise not ordinarily possessed by the typical legal professional. It does not say that activities that encourage cost savings may be taxed. Section 1920(4) authorizes awarding only the cost of making copies.

7

Race Tires, 674 F.3d at 169 (footnote omitted); accord Country Vinter, 718 F.3d at 260. Just as the preparatory measures taken in pre-digital discovery to locate, collect, and review documents before producing copies were not taxable, so too the preliminary steps required to meet electronic discovery obligations are not recoverable under § 1920(4). Race Tires, 674 F.3d at 169–70 ("[G]athering, preserving, processing, searching, culling and extracting ESI simply do not amount to 'making copies.'"); see also CBT Flint Partners, 737 F.3d at 1328 ("[O]nly the costs of creating the produced duplicates are included [within § 1920(4)], not a number of preparatory or ancillary costs commonly incurred leading up to, in conjunction with, or after duplication.").

Courts differ as to whether the extraction of metadata amounts to making copies or is merely a preliminary step. Compare Race Tires, 674 F.3d at 170 (holding metadata extraction does not qualify as copying) with CBT Flint Partners, 737 F.3d at 1328 ("To the extent that a party is obligated to produce . . . electronic documents in a particular format or with particular characteristics intact (such as metadata, color, motion, or manipulability), the costs to make duplicates in such a format or with such characteristics preserved are recoverable as 'the costs of making copies . . . necessarily obtained for use in the case.'") (quoting 28 U.S.C. § 1920(4)) (footnote omitted).

Additionally, copying costs are not taxable under § 1920(4) unless "the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Thus, "if [an electronic discovery] vendor does its chargeable work (i.e., work covered by the statute if performed on a single document) on a large volume of documents before culling to produce only a subset, the awarded copying costs must be confined to the subset actually produced, e.g., by using

8

document-specific charges if they are available or by using a reasonable allocation method such as prorating." CBT Flint Partners, 737 F.3d at 1330 (emphasis in original); see also Online DVD-Rental, 779 F.3d at 929 (" . . . § 1920(4) does not award costs merely because a process resulted in the creation of a copy. . . . Rather, a further determination is required: whether the copy was necessarily obtained for use in the case.").

Here, Integreon's charges related to the "forensic collection" process were incurred to collect native files from 80 sources and copy them into a single unreadable file. Graphic argues the forensic collection costs are recoverable because the process of copying the individual files into the E01 file was necessary to preserve metadata, which was required by the ESI Protocol. However, gathering, preserving, and extracting ESI is not "making copies." Race Tires, 674 F.3d at 170.

Additionally, even if the initial copying of native files to the E01 file was a necessary step toward producing a copy with metadata intact, not all of the files copied during the forensic collection process were necessarily obtained for use in the litigation. For example, some of the files were removed as duplicates during the conversion process. The cost to forensically copy a file that was not actually produced is not taxable. Graphic has not prorated its forensic collection costs to limit the costs to the subset of copied documents that were actually produced. Thus, the Court exercises its discretion to deny forensic collection fees for the additional reason that the fees include the costs of copying documents that were not necessarily obtained for use in this litigation. See Jo Ann Howard & Assoc., 146 F. Supp. 3d at 1083 (denying costs where moving

9

party failed to adequately separate taxable from nontaxable costs).[3]

Integreon's charges related to the conversion process are identified as "EDD-Pre-Processing," "EDD-Native Process," "Pre-Process," and "Native Process." Subsumed within these charges are fees for comparing each converted file to the other converted files and removing duplicates. Scherer Decl. ¶ 11 (stating conversion process included the process of deduplicating files). "[D]eduplication is not fairly covered by section 1920(4)." CTB Flint Partners, 737 F.3d at 1331. Graphic has not specified which portion of Integreon's charges for "EDD-Pre-Processing," "EDD-Native Process," "Pre-Process," and "Native Process" are attributable to the process of comparing files and removing duplicates. Because Integreon's charges for the conversion process include nontaxable deduplication costs, the costs for "EDD-Pre-Processing," "EDD-Native Process," "Pre-Process," and "Native Process" are denied. Additionally, Integreon's fees for technical time to setup the conversion are denied because "fees are permitted only for the physical preparation and duplication of documents, not the intellectual effort involved in their production." Race Tires, 674 F.3d at 169.

Integreon's charges for creating OCR text are also denied. The ESI Protocol did not require documents to be generated in OCR text unless the documents were redacted. ESI Protocol at 5. Although creating OCR text may have assisted Graphic's counsel in their review of document production, creating OCR text for counsel's convenience does not equate to making copies necessarily obtained for use in litigation. See Online DVD-Rental, 779 F.3d at 929 ("[I]f the . . . copy was created solely for the convenience of counsel, the cost of making the copy

---

[3] Travel and lodging costs for the employee who performed the forensic collection are also denied because these ancillary costs cannot be reasonably characterized as the costs of making copies.

10

would not be taxable.").

Graphic argues its ESI costs should be allowed because the costs are reasonable given the scope of Inline's allegations, the amount of damages sought, and the expansiveness of Inline's discovery requests. None of these factors are relevant to whether Graphic's ESI costs are taxable under § 1920(4). "Indeed, there is a 'presumption . . . that the responding party must bear the expense of complying with discovery requests.'" Race Tires, 674 F.3d at 170–71 (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358 (1978)). "Neither the language of § 1920(4), nor its history, suggests that Congress intended to shift all the expenses of a particular form of discovery—production of ESI—to the losing party. Nor can such a result find support in Supreme Court precedent, which has accorded a narrow reading of the cost statute in other contexts." Id. at 171. If a party believes that responding to discovery will impose an undue burden or expense, the party may move for a protective order under Federal Rule of Civil Procedure Rule 26(c) and ask the court to condition the discovery on the requesting party's payment of the costs of the discovery. Id.; CBT Flint Partners, 737 F.3d at 1331. A federal court lacks authority under § 1920(4) to award electronic discovery costs for activities other than making copies. For the above reasons, Graphic's request for taxation of its ESI costs is denied.

## C. Inline's Motion for Review

### 1. Witness Fees

Inline argues Graphic was improperly awarded over $10,000 in witness fees for airfare, meals, and hotel expenses incurred by Graphic's witnesses to travel to and attend depositions at Graphic's counsel's offices in Atlanta, Baltimore, and Washington, D.C. The locations of the depositions were chosen by Graphic's counsel, who elected to have the depositions at their

11

offices rather than where each witness resides. See Kroll Decl. [Docket No. 1054] Exs. 1–6. Inline contends that since the deposition locations were selected for the convenience of Graphic's counsel, Graphic should bear the costs associated with the witness' travel. Inline requests the Cost Judgment be amended to deny all witness costs with the exception of $40 that was awarded for the subpoenaed deposition of Harry Gardner ("Gardner").

Graphic responds that Inline agreed to the deposition locations and benefitted from holding the depositions in cities with airport hubs, rather than traveling the country to the sometimes rural locations where Graphic employees reside.

Several courts have held that a party may not recover its deponent witnesses' travel and subsistence costs if the costs resulted from the party's election of a deposition location for the convenience of its counsel. See, e.g., SP Techs., LLC v. Garmin Int'l, Inc., No. 08–3248, 2014 WL 300987, at *6 (N.D. Ill. Jan. 10, 2014); Newport News Holdings Corp. v. Virtual City Vision, Inc., No. 08–19, 2009 WL 10689694, at *4 (E.D. Va. July 24, 2009), aff'd, 650 F.3d 423 (4th Cir. 2011); Fleming v. United States, 205 F.R.D. 188, 189–90 (W.D. Va. 2000); McBrian, Inc. v. Liebert Corp., 173 F.R.D. 491, 493 (N.D. Ill. 1997). The Court finds these cases persuasive. Graphic benefitted from the deposition locations because its counsel did not have to incur travel expenses to depose the witnesses in their home locations. Additionally, the witnesses would not have incurred hotel and travel expenses—including airfare from Denver, Kansas City, San Francisco, and other cities—had they been deposed in their home locations. Because Graphic's counsel elected to have these depositions take place in their offices, Graphic should bear the costs associated with the witness' travel.

The only Graphic witness who appears to have been deposed in their home location is

Ray Gaffney ("Gaffney"), who incurred $33.00 in parking expenses. See Ames Decl. [Docket No. 1039, Attach. 1] ¶ 15, Ex. P. Accordingly, the Cost Judgment will be amended to limit witness fees to $73, which represents Gaffney's $33 parking expense and Gardner's uncontested $40 witness fee.

### 2. *Pro Hac Vice* Fees

Inline argues it should not have been taxed for $800 in fees Graphic incurred to admit eight of its counsel *pro hac vice*. In 2009, the Eighth Circuit recognized that courts differ over whether *pro hac vice* fees are recoverable under § 1920, and held that "[w]e agree with those courts that have concluded that pro hac vice fees are recoverable as fees of the clerk under § 1920." Craftsmen Limousine, Inc. v. Ford Motor Co., 579 F.3d 894, 898 (8th Cir. 2009). In arguing that *pro hac vice* fees are not taxable, Inline cites Kalitta Air L.L.C. v. Central Texas Airborne System, Inc., 741 F.3d 955, 958 (9th Cir. 2013). In Kalitta Air, the Ninth Circuit noted that the Eighth Circuit's Craftsmen Limousine decision was issued prior to the Supreme Court's 2012 decision in Taniguchi, which emphasized that "taxable costs are limited by statute and are modest in scope." Id. (quoting Taniguchi, 566 U.S. at 573). However, even after Kalitta Air, courts in the Eighth Circuit continue to follow the Eighth Circuit's Craftsmen Limousine decision and award pro hac vice admission fees to prevailing parties. See, e.g., Aly v. Hanzada for Imp. & Exp. Co., Ltd., No. 12–6069, 2017 WL 3763532, at *1 (W. D. Mo. Aug. 30, 2017); Abdullah v. Cty. of St. Louis, Mo., No. 14-1436, 2015 WL 5638064, at *1 (E.D. Mo. Sept. 24, 2015); LexMac Energy, L.P. v. Macquarie Bank Ltd., No. 08–48, 2014 WL 11516245, at *2 (D.N.D. Feb. 19, 2014)). The Clerk properly awarded *pro hac vice* costs according to Eighth Circuit precedent.

## IV. CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Graphic's Motion for Review of Clerk's Cost Judgment [Docket No. 1066] is **DENIED**;

2. Inline's Motion for Review of Clerk's Cost Judgment [Docket No. 1068] is **GRANTED IN PART and DENIED IN PART** as specified above; and

3. Graphic's Cost Judgment [Docket No. 1065] is amended to award costs as follows:

    | | |
    |---|---:|
    | Fees of the Clerk: | $800.00 |
    | Fees for Transcripts: | $35,238.95 |
    | Fees for Witnesses | $73.00 |
    | Fees for copies: | $1,082.85 |
    | Total: | $37,194.80 |

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

 s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: July 26, 2019